UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| JAFARI T. MOORE, ) | |
| ) | |
| Plaintiff, ) | No. 6:14-CV-114-DLB-HAI |
| ) | |
| v. ) | REPORT & RECOMMENDATION |
| ) | |
| UNITED STATES OF AMERICA, *et al.*, ) | |
| ) | |
| Defendants. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On April 21, 2013, Federal inmate Jafari T. Moore injured his left pinky finger while housed at the United States Penitentiary in Pine Knot, Kentucky ("USP McCreary"). Over two years later, the finger was partially amputated. He brings two claims related to these events: an Eighth Amendment claim of deliberate indifference under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), and a claim for medical malpractice under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-80. He names as defendants the United States, three medical personnel who treated him in Kentucky, and the director of the Federal Bureau of Prisons ("BOP"). He alleges that

> Defendants only provided minimal care and were deliberately indifferent to the seriousness of his injury. Moore alleged he suffered pain and anguish. Over a year passed before he was finally seen by a hand specialist who, upon examination, determined that the injury had become chronic and thus irreparable, requiring amputation.

D.E. 59 at 22.

## I. Procedural History

Moore filed his initial *pro se* complaint in May 2014. D.E. 1. Upon initial screening, the Court dismissed Moore's claims against the Department of Agriculture, Department of Justice, the warden, and several other individuals. D.E. 13. On April 14, 2015, Moore filed a motion for reconsideration and for leave to file an amended complaint. D.E. 19. The Court reaffirmed its dismissal of various defendants, but allowed Moore to proceed on his amended complaint. D.E. 23.

Moore's amended complaint names the following defendants who have not been dismissed (*see* D.E. 24 at 4-5):

- The United States of America, under the FTCA.
- Charles Samuels, Jr., Director of the BOP, "for injunctive purposes only."
- Christopher Griffis, the initial EMT who treated Moore the day of his injury.
- Mark A. Bryant, M.D., who treated Moore three days after his injury.
- Jorge Vazquez-Velazquez, M.D. ("Velazquez"), who saw Moore 20 days after the injury and recommended that Moore see an orthopaedist.

Moore seeks $1 million in compensatory damages from Griffis, Bryant, and Velazquez under his *Bivens* deliberate-indifference claim, and $250,000 in compensatory damages from the government under the FTCA. He also seeks $50,000 in punitive damages against the individual defendants, plus an additional $10,000 in punitive damages against Griffis. D.E. 24 at 21. He also seeks an injunction ordering Samuels to investigate the allegations, provide timely and adequate medical treatment to Moore, and ensure that Moore is protected from retaliation. *Id*. at 20.

On August 27, 2015, the affected finger was partially amputated. D.E. 50 at 49; D.E. 59 at 13.

On March 11, 2016, Defendants moved to dismiss the amended complaint or, in the alternative, for summary judgment. D.E 48, 50. The motion was accompanied by various declarations. D.E. 50-1 to 50-14. Regarding Moore's FTCA claim, Defendants argue that Moore has not shown his medical care was negligently provided. Regarding his *Bivens* claim, Defendants argue that (1) the record does not prove deliberate indifference; (2) Defendants are entitled to qualified immunity; (3) Bryant is entitled to absolute immunity, and (4) Moore is not entitled to injunctive relief.

Moore then obtained counsel (D.E. 51, 54) and requested an extension of time to respond to Defendants' motion (D.E. 53), which was granted (D.E. 55).

Moore, through counsel, responded to the motion on June 1, 2016. D.E. 59. Moore's response brief makes no mention of claims against Samuels or Moore's request for injunctive relief. He argues that summary judgment is inappropriate because disputed material facts exist—whether Defendants breached the standard of medical care and acted with deliberate indifference. D.E. 59 at 19. Along with the response, Moore filed a two-page affidavit by a medical expert, Brian Fingado, M.D., which opines that Defendants injured plaintiff by breaching the applicable medical standard of care. D.E. 59-15. Moore argues that the record shows Defendants were deliberately indifferent, and that Defendants are not shielded by governmental immunity. D.E. 59 at 29-30.

On June 17, Defendants replied. D.E. 64. The undersigned recommends that their motion be granted.

## II. Legal Standards—Summary Judgment

The Court must treat Defendants' motion as a motion for summary judgment under Rule 56 because they have attached and relied upon documents and declarations extrinsic to the pleadings. Fed. R. Civ. P. 12(d); *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010). A motion under Rule 56 challenges the viability of the other party's claim by asserting that at least one essential element of that claim is not supported by legally-sufficient evidence. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). If the moving party demonstrates that there is no genuine dispute as to any material fact and that he is entitled to a judgment as a matter of law, he is entitled to summary judgment. *Kand Med., Inc. v. Freund Med. Prods., Inc.*, 963 F.2d 125, 127 (6th Cir. 1992).

The moving party does not need his own evidence to support this assertion, but need only point to the absence of evidence to support the claim. *Turner v. City of Taylor*, 412 F.3d 629, 638 (6th Cir. 2005). The responding party cannot rely upon allegations in the pleadings, but must point to evidence of record in affidavits, depositions, and written discovery which demonstrates that a factual question remains for trial. *Hunley v. DuPont Auto*, 341 F.3d 491, 496 (6th Cir. 2003). "A trial court is not required to speculate on which portion of the record the non-moving party relies, nor is there an obligation to 'wade through' the record for specific facts." *United States v. WRW Corp.*, 986 F.2d 138, 143 (6th Cir. 1993).

The Court reviews all of the evidence presented by the parties in a light most favorable to the responding party and draws all reasonable factual inferences in his favor. *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005). The Court must grant summary judgment if the evidence would not support a jury verdict for the responding party with respect to at least one essential element of his claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). If the

applicable substantive law requires the responding party to meet a higher burden of proof, his evidence must be sufficient to sustain a jury's verdict in his favor in light of that heightened burden of proof at trial. *Harvey v. Hollenback*, 113 F.3d 639, 642 (6th Cir. 1997); *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1444 (6th Cir. 1993).

### III. FTCA Claim

In *United States v. Muniz*, 374 U.S. 150 (1963), the Supreme Court held that the FTCA applies to federal inmates' claims alleging personal injuries sustained—while incarcerated—as a result of the negligence of government employees. Liability under the FTCA is generally determined by the law of the state where the alleged injury occurred. *Young v. United States*, 71 F.3d 1238, 1242 (6th Cir. 1995). An FTCA claim may be asserted only against the United States. 28 U.S.C. § 2674; *Smith v. United States*, 561 F.3d 1090, 1099 (10th Cir. 2009).

Under Kentucky negligence law, including medical negligence, the Plaintiff must establish the following elements: (1) a duty of care; (2) breach of that duty; (3) actual injury, and (4) the injury was proximately caused by the negligence. *Grubbs ex rel. Grubbs v. Barbourville Family Health Ctr., P.S.C.*, 120 S.W.3d 682, 687-88 (Ky. 2003), *as amended* (Aug. 27, 2003); *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 247 (Ky. 1997).

"Under Kentucky law, a plaintiff alleging medical malpractice is generally required to put forth expert testimony to show that the defendant medical provider failed to conform to the standard of care." *Blankenship v. Collier*, 302 S.W.3d 665, 670 (Ky. 2010); *accord Green v. Owensboro Med. Health Sys., Inc.*, 231 S.W.3d 781, 783 (Ky. Ct. App. 2007). "[T]he plaintiff in a medical negligence case is required to present expert testimony that establishes (1) the standard of skill expected of a reasonably competent medical practitioner and (2) that the alleged negligence proximately caused the injury." *Andrew v. Begley*, 203 S.W.3d 165, 170 (Ky. Ct.

App. 2006). The expert's opinion must be based "on reasonable medical probability and not speculation or possibility." *Sakler v. Anesthesiology Associates, P.S.C.*, 50 S.W.3d 210, 213 (Ky. Ct. App. 2001).

To be clear, meeting this standard requires that the expert establish the applicable standard of care. "To establish a prima facie case of medical malpractice, a plaintiff must introduce evidence, *in the form of expert testimony*, demonstrating (1) the standard of care recognized by the medical community as applicable to the particular defendant . . . ." *Sandler v. United States*, No. 6:11-CV-206-GFVT, 2013 WL 5468493, at *6 (E.D. Ky. Sept. 30, 2013) (quoting *Heavrin v. Jones*, No. 02-CA-16-MR, 2003 WL 21673958, at * 1 (Ky. Ct. App. July 18, 2003)). "It is the Plaintiff's burden to find a doctor who will testify to the standard of treatment of each condition and testify that in his or her expert opinion, the standard was breached by the federal employee(s) in this case." *Id*. (quoting *Hernandez v. United States,* No. 5:08-CV-195-KSF, 2009 WL 1586809, at *6 (E.D. Ky. June 5, 2009)); *see also Partin v. Tilford*, No. 5:13-CV-193-CRS, 2016 WL 3212248, at *2 (W.D. Ky. June 7, 2016) (granting summary judgment when plaintiff failed to establish "what a proper [treatment] entails"); *Smith v. Rees*, No. 5:07-CV-180-TBR, 2011 WL 3236635, at *3 (W.D. Ky. July 28, 2011) (requiring expert testimony to establish the standard of care); *Beard v. United States*, No. 5:08-CV-105-KSF, 2009 WL 305893, at *7-9 (E.D. Ky. Feb. 6, 2009) (granting summary judgment when plaintiff offered no expert proof establishing the standard of care); *Hitch v. St. Elizabeth Med. Ctr., Inc.*, No. 2014-CA-1361-MR, 2016 WL 1557734, at *2 (Ky. Ct. App. Apr. 15, 2016) (granting summary judgment when the expert "make no statement to indicate what the standard of care is"); *Tackett v. Appalachian Reg'l Healthcare, Inc.*, No. 2007-CA-720-MR, 2008 WL 2779528, at *2-4 (Ky. Ct.

App. July 18, 2008) (granting summary judgment when the plaintiff's expert "failed to produce evidence as to the medical standard of care at issue")

Exceptions to this expert-testimony rule exist, including "*res ipsa loquitur* cases" and cases where the physician admitted negligence, *Blankenship*, 302 S.W.3d at 670, but Moore has not argued any such exception fits here. *See also Andrew*, 203 S.W.3d at 171. In an attempt to meet this expert-evidence requirement, Moore's response brief is accompanied by the affidavit of Dr. Fingado. D.E. 59-15.

Dr. Fingado's affidavit fails to raise a disputed issue of material fact or provide sufficient evidence proving the elements of negligence against any Defendant. Dr. Fingado states that he is "licensed to practice medicine by the Florida Medical Board" and "Certified by the American Board of Orthopaedic Surgery with Certification of Added Qualification in Hand Surgery." D.E. 59-15 at 1. He states he has reviewed Moore's medical records and is "familiar with the applicable standards of care." *Id*. But he nowhere indicates what that standard of care might be. Dr. Fingado briefly recounts the history of Moore's finger injury. *Id*. ¶¶ 6-7. Then he states:

> It is my professional opinion that the Defendants named in the complaint, including Charles Samuels, Jr.; Mark A. Bryant, Assistant Health Services Administrator (AHSA), FCC Coleman; Jorge Vazquez-Velazquez, M.D., Regional Physician (Retired); and Christopher Griffis, former Emergency Medical Technician (EMT), USP McCreary, breached the standard of care, where said defendants by their acts; actions and/or omissions performed outside acceptable professional or occupational standards or treatment practices, by failing to provide timely and proper medical treatment to the Plaintiff, Mr. Jafari Moore, relative to the allegations contained in the Complaint.
> Further, it is my professional opinion that the aforementioned breach of the standard of care by delaying required medical treatment to Plaintiffs serious medical needs, was the direct and proximate cause of the partial amputation of the fifth finger of Plaintiff's left hand.

D.E. 59-15 at 2 ¶¶ 8-9.

Dr. Fingado's affidavit is conclusory and unenlightening. Nowhere does he articulate the relevant standard of care, *i.e.*, explain what a reasonable health-care provider would have done during the interactions between Moore and Defendants. Nor does he explain *how* any single Defendant breached the standard of care. Nor does he explain how any act or omission by any Defendant proximately caused Moore's injury. His short affidavit is a skeleton devoid of evidentiary meat for the Court to digest. Dr. Fingado simply does not address the elements of medical negligence in any meaningful way.

"If a court concludes that the evidence supporting the expert's position is insufficient to allow a reasonable juror to conclude that the position more likely than not is true, then the court remains free to prohibit the case from proceeding to the jury." *Glaser v. Thompson Med. Co.*, 32 F.3d 969, 972 (6th Cir. 1994) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993)). "Of course, an expert opinion which is conclusory and fails to set forth the underlying rationale is not adequate" to raise a triable issue. *Austin v. Children's Hosp. Med. Ctr.*, 92 F.3d 1185 (6th Cir. 1996) (table) (citing *Turpin v. Merrell Dow Pharm., Inc.*, 959 F.2d 1349, 1360 (6th Cir. 1992)). Such is the case here. Dr. Fingado's affidavit fails to support a viable medical negligence claim against any Defendant. At the very least, the affidavit needed to establish the relevant standard of care. But this is did not do.

Regarding Defendant Bryant, in his amended complaint, Moore states that on April 24, 2013, during "Sick call," he met with Bryant and asked "to be taken to the outside hospital." D.E. 24 at 8. Then, Bryant told Moore to "Keep it elevated." *Id*. This is the extent of the factual information regarding Bryant in the amended complaint. In his response to the motion for summary judgment, Moore adds that Bryant gave him Ibruprofen "and a stax splint was placed on the left fifth finger." D.E. 59 at 2-3. Bryant's report classified the injury as "Other injury of

finger, 959.5—Current, Temporary/Acute, Initial." *Id*. (quoting D.E. 59-1 at 8-9). The medical report also notes that Moore is to "[f]ollow up after x-rays are completed." D.E. 59-1 at 9. Bryant never reappears in the medical records.

Moore provides no evidence that Bryant breached the standard of care during this brief clinical encounter. He argues in his response memo that "Defendant Bryant's classification of Moore's finger injury as 'acute' in his assessment *prima facie* establishes Defendant Bryant's knowledge at the time of this encounter that immediate medical attention was required in order to prevent the irreversible loss of function of Moore's finger." D.E. 59 at 3 n.5. He argues that Bryant's use of the word "acute" in his clinical-encounter report corresponds to the highest level among the "Categories of Care" listed in a Patient Care Program Statement issued by the Bureau of Prisons. The highest-level category is "Medically Necessary—Acute or Emergent." D.E. 59-1 at 108. Such conditions are "of an immediate, acute or emergent nature, which without care would cause rapid deterioration of the inmate's health, significant irreversible loss of function, or may be life-threatening." *Id*. "Examples of conditions considered acute or emergent" include heart attacks, strokes, head injuries, asthma attacks, sudden vision loss, and pregnancy complications. *Id*.

This argument is quite a stretch. Moore provides no evidence that Bryant's use of the word "acute" in describing an injury is tantamount to a finding that the injury qualifies as "Medically Necessary—Acute or Emergent." Online medical dictionaries define "acute" in various ways. It may mean "of abrupt onset," or "of short duration."[1] The word may also "refer to the acute phase of injury, meaning the immediate post-injury healing."[2] These varying definitions highlight the need for appropriate expert proof. Yet, Dr. Fingado's affidavit does

---

[1] *See* "Acute," MedicineNet.com, http://www.medicinenet.com/script/main/art.asp?articlekey=2133.
[2] *See* "Acute (medicine," Wikipedia, https://en.wikipedia.org/wiki/Acute_(medicine).

nothing to support Moore's interpretation, or provide any factual basis for finding that Bryant acted negligently by applying a splint, providing Ibuprofen, and asking Moore to follow up after his x-ray.

Regarding Defendant Griffis, Moore's amended complaint identifies him as "the acting [medical] care provider" at USP McCreary on the day of the injury. D.E. 24 at 5. Moore states that, at his initial screening, his finger was clearly broken and he asked to be taken to an outside hospital. But Griffis denied the request and applied a splint made out of popsicle sticks. *Id*. at 8. In his response memo, Moore adds that Griffis made a "request for radiology." D.E. 59 at 2. According to Griffis's clinical encounter report, he assessed Moore as suffering a "sprain and/or strain," and identified the injury as "level 2." D.E. 59-1 at 5.

Nowhere does Moore identify the standard of care applicable to this encounter with EMT Griffis or explain how he breached that standard. The expert affidavit makes only a bare conclusion, but this is not enough to raise a genuine issue of material fact.

Moore argues that the reference to "level 2" in Griffis's report corresponds to the second level of care from the Program Statement previously referenced. D.E. 59 at 25. Even if this is correct, Moore's expert makes no claim that Griffis acted negligently in the context of a "level 2" injury. Moore further argues that "a genuine question exists as to whether . . . the injury should have been classified at level 1." *Id*. But a question is not genuine unless it is raised by competent evidence. *See* Fed. R. Civ. P. 56(c). And nowhere does Moore's expert address the "level" of Moore's injury. Moore points to nothing else in the record regarding the propriety of Griffis's impression that Moore's injury on the day it occurred was "level 2."

Regarding Defendant Velazquez, Moore's amended complaint states that this physician "co-signed EMT-Griffis['s] initial Treatment plan." D.E. 24 at 9; *see also* D.E. 59-1 at 7. He

10

alleges that, twenty days after the injury, Velazquez "ordered an [unnecessary] x-ray, instead of sending plaintiff to the emergency room." *Id*. In his response memo, he clarifies that Dr. Velazquez "evaluated the x-ray results" and "requested an orthopedic consultation." D.E. 59 at 3-4; *see also* D.E. 59-1 at 12-13. He also alleges that Dr. Velazquez had told him that "they took too long," *i.e.*, that Moore should have seen an outside doctor sooner. D.E. 59 at 4, 6; 59-1 at 53.

However, nowhere does Moore's expert identify the standard of care applicable to this encounter with Dr. Velazquez or explain how Dr. Velazquez breached that standard. The expert affidavit makes only a bare conclusion. Moore also offers the same argument as with Bryant regarding the use of the word "acute" in Dr. Velazquez's report (D.E. 59 at 4 n.6), but this argument fails for the same reasons previously discussed.

Moore's expert testimony fails to sufficiently support the elements of a Kentucky negligence claim against Defendants. Therefore, Moore's claim against the United States under the FTCA must fail.

## IV. *Bivens* Claim

Moore's *Bivens* claims against Defendants Bryant, Griffis, and Velazquez in their individual capacities survived initial review. D.E. 23 at 6-9, 13. The Eighth Amendment "forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward [his] serious medical needs." *Blackmore v. Kalamazoo County*, 390 F. 3d 890, 895 (6th Cir. 2004) (*quoting Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A plaintiff asserting deliberate indifference to his serious medical needs must establish both the objective and subjective components of such a claim. *Jones v. Muskegon Co.*, 625 F.3d 935, 941 (6th Cir. 2010). The objective component requires the plaintiff to show that the medical condition is "sufficiently serious," *Farmer v. Brennan*, 511 U.S. 825, 834 (1994),

11

such as one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (citations omitted). The subjective component requires the plaintiff to show that prison officials actually knew of a substantial risk of harm to the plaintiff's health but consciously disregarded it. *Cooper v. County of Washtenaw*, 222 F. App'x 459, 466 (6th Cir. 2007); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994).

As previously discussed, Moore has not established that Defendants Bryant, Griffis, and Velazquez were medically negligent. As the Supreme Court has noted, "deliberate indifference describes a state of mind more blameworthy than negligence." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). "Negligence in diagnosing a medical condition does not constitute unconstitutional deliberate indifference." *Jones v. Muskegon Cty.*, 625 F.3d 935, 945 (6th Cir. 2010) (quoting *Bertl v. City of Westland*, No. 07-2547, 2009 WL 247907, at *5 (6th Cir. Feb. 2, 2009)); *see also Reilly v. Vadlamudi*, 680 F.3d 617, 624 (6th Cir. 2012) ("Deliberate indifference is characterized by obduracy or wantonness—it cannot be predicated on negligence, inadvertence, or good faith error."); *Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1995). If Moore cannot even establish negligence (for the reasons discussed above), he cannot establish deliberate indifference, which is a higher standard of culpability. Nor does Moore present any evidence to buttress his conclusory allegations that Defendants consciously disregarded a substantial risk of harm during their brief encounters with him

In short, Moore has failed to point to evidence in the record that, interpreted in the light most favorable to him, would establish deliberate indifference or raise a disputed issue of material fact. Defendants are entitled to judgment as a matter of law.

12

## V. Qualified Immunity

Because Moore has failed to prove deliberate indifference or negligence, it is also true that the named Defendants are entitled to qualified immunity.

> Qualified immunity protects state officials, including prison employees, so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. In resolving qualified immunity claims, we ask whether: (1) the facts, viewed in the light most favorable to Plaintiff, show a violation of a constitutional right; and (2) the right at issue was clearly established at the time of the alleged misconduct. *Id.*

*Reilly v. Vadlamudi*, 680 F.3d 617, 623 (6th Cir. 2012) (internal citations and quotation marks omitted). "[Q]ualified immunity must be assessed in the context of each individual's specific conduct." *Id*. at 624. "The burden rests on Plaintiff to show Defendants are not entitled to immunity." *Id*. at 623.

In this case, the facts, when viewed in the light most favorable to Moore, do not show that any Defendant violated a constitutional right. The constitutional right includes the right to be free from cruel and unusual punishments inflicted in the form of deliberate indifference to medical needs under *Bivens*. As discussed, the facts themselves fail to establish negligence—much less deliberate indifference. Qualified immunity, which shields Defendants from being sued, *Reilly*, 680 F.3d at 623, provides an alternative basis for granting summary judgment in favor of Defendants Bryant, Griffis, and Velazquez.

The government further argues that Defendant Bryant is entitled to absolute immunity from *Bivens* actions under 42 U.S.C. § 233(a). This statute grants absolute immunity to Public Health Service employees and prescribes the FTCA as the exclusive remedy. D.E. 50 at 33-34. Moore "agrees that if it is proven that Defendant Bryant was a commissioned member of the PHS" at the time of his interaction with Moore, then he "is entitled to absolute immunity from the instant *Bivens* action." D.E. 59 at 23 n.13. In his declaration, Bryant states that since 1997

he has been "a commissioned officer with the United States Public Health Service." D.E. 50-6 at 1 ¶ 2. Because Moore does not challenge the accuracy of Bryant's declaration, it appears that Bryant is also entitled to absolute immunity.

### VI. Injunctive Relief

Moore seeks "prospective" injunctive relief against "Charles E. Samuels Jr. in his official capacity as the director of the federal B.O.P." D.E. 24 at 7. He asks the Court "to [compel] the B.O.P. to provide plaintiff proper and adequate medical treatment for his condition." *Id*. He seeks an injunction ordering Samuels to (1) investigate his allegations of "orchestrated denial of medical treatment," (2) ensure that Moore receives proper medical treatment, and (3) ensure that Moore is "not subjected to reprisal" for filing suit. *Id*. at 20-21.

Prospective injunctive relief for federal prisoners is regulated by 18 U.S.C. § 3626(a)(1), which provides that:

> **(A)** Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

Defendants argue in their motion for summary judgment that Moore has not satisfied the factors necessary to warrant a *preliminary* injunction. D.E. 50 at 57-60.

Moore, in his response, makes no mention of his injunctive relief claim or Defendant Samuels, so the Court considers the claim abandoned. *See Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 369 (6th Cir. 2013). Nevertheless, it also fails on the merits. Section 3626(a)(1) mandates that prospective injunctive relief "shall extend no further than necessary to correct the violation of the Federal right." Because Moore's *Bivens* claims cannot survive this motion for

14

summary judgment, there is no violation of a federal right for the Court to correct through prospective injunctive relief.

## VII. Conclusion

The undersigned **RECOMMENDS** that Defendants' motion for summary judgment (D.E. 48) be **GRANTED** in full.  The Court directs the parties to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b) for appeal rights and mechanics concerning this Report and Recommendation, issued under subsection (B) of the statute.  Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Court.  Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 11th day of August, 2016.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge